UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUANITA JACKSON,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.

---

18-CV-00413-MJR
DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 15)

Plaintiff Juanita Jackson ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is denied, and defendant's motion (Dkt. No. 13) is granted.

---

[1] The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND[2]

On December 26, 2013, plaintiff protectively filed applications for DIB and SSI alleging disability as of January 1, 2010 due to depression, bipolar disorder, and diabetes. (Tr. 199-207)[3] Her claims were denied initially on May 22, 2014. On July 12, 2016, Administrative Law Judge ("ALJ") Roxanne Fuller held a video hearing at which plaintiff appeared and testified. (Tr. 23, 36-60) An impartial Vocational Expert ("VE") also testified. (*Id.*)

The ALJ issued an unfavorable decision on August 30, 2016. (Tr. 14-35) The Appeals Council subsequently denied review (Tr. 1-6), and this timely action followed. (Dkt. No. 1)

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is discussed at length in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[3] Citations to "Tr.___" refer to the pages of the administrative transcript. (Dkt. No. 8)

2

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first,

4

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2010. (Tr. 19) At step two, the ALJ found that plaintiff had the severe impairments of degenerative joint disease in the right knee; chronic kidney disease; lower back pain; obesity; depression; learning disorder; and bipolar disorder. (Tr. 19) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20) Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she can occasionally climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasional exposure to moving mechanical parts; occasional operation of a motor vehicle; occasional exposure to unprotected heights and is able to perform simple routine repetitive tasks.

(Tr. 22)

Proceeding to step four, the ALJ concluded, based upon the testimony of the VE, that plaintiff was capable of her past relevant work as housekeeper and laundry worker. (Tr. 29) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 30)

6

IV. *Plaintiff's Challenges*

Plaintiff argues that the physical and mental RFC findings by the ALJ were not supported by substantial evidence. (*See* Dkt. No. 11-1 ("Pl. Mem.") at 12-18.

First, plaintiff asserts that the ALJ failed to explain why the opinion of plaintiff's nurse practitioner ("NP Lamparelli") was rejected and why the consulting physician's mention of incontinence was rejected. (Pl. Mem. at 12-13)

The ALJ evaluated four opinions by treating source NP Lamperelli. (Tr. 28) In doing so, he afforded great weight to an August 7, 2015, opinion that plaintiff would be able to return to work without limitations following a brief illness as it was consistent with NP Lamparelli's reports that found no evidence of physical limitations. (Tr. 28; *see* Tr. 522-23 [August 7, 2015, physical exam findings were unremarkable], 531-32 [September 2015, essentially normal physical exam findings, plaintiff denied back and joint pain and denied urinary problems], 609-10 [December 2015, plaintiff complained of cough, denied urinary frequency, back pain, or joint pain and physical examination findings were normal, including normal musculoskeletal and neurological findings])

The ALJ appropriately gave little weight to NP Lamperelli's opinions dated February 23, April 7, and June 2, 2016. (Tr. 28-29, 541, 545-46, 637-41) Applying the regulations in effect at the time of plaintiff's application, the ALJ noted that NP Lamperelli was not an acceptable medical source. (Tr. 28) *See Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. Nov. 5, 2008) (citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)); *see also Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) ("While the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight,

to the opinion of 'other sources', the ALJ has a duty to address and discuss the opinion."). The ALJ's treatment of these opinions was not erroneous.

The ALJ also properly observed that the February and April statements that plaintiff was "unable to work" did not contain any functional limitations nor did they explain the deterioration in her condition. (Tr. 28, 541, 545-46) See 20 C.F.R. § 404.1527(d) (no special significance will be afforded to an opinion that a claimant is "disabled" or "unable" to work, as that is an issue reserved to the Commissioner); see also Snell v. Apfel, 177 F.3d 128,133 (2d Cir. 1999) ("[S]ome kinds of findings— including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner....[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.")

With respect to physical residual functional capacity questionnaire completed on June 2, 2016, the ALJ observed that NP Lamperelli provided no explanation as to why plaintiff's knee pain would cause her to miss four or more days of work per month or when and why her condition worsened between August 2015 and June 2016. Further, the ALJ noted that the opinion was inconsistent with physical therapy records, which indicated that when plaintiff was "complaint with treatment her knee condition rapidly improves . . . ." (Tr. 29, 555, 557, 559, 566 641) An ALJ may reasonably consider a pattern of noncompliance. See, e.g., Wilson v. Colvin, No. 16-CV-6509, 2017 WL 2821560, at *6 (W.D.N.Y. June 30, 2017); Nicholson v. Colvin, No. 13-CV-1296 , 2015 WL 1643272, at *7 (N.D.N.Y. Apr. 13, 2015). The ALJ also found NP Lamperelli's June opinion was inconsistent with the evidence, which revealed mild diagnoses and/or unremarkable findings. (Tr. 29, see, e.g., Tr. 537 [right knee x-rays showed mild bicompartmental

8

osteoarthritis and small effusion]; 685 [treating physician assessed normal gait, normal physical examination findings]).

Plaintiff underwent a consultative examination with Dr. Toor on May 12, 2014. Dr. Toor's examination of plaintiff was unremarkable and he assessed her prognosis as good, with no limitations for physical activity. (Tr. 328-29) He noted plaintiff's complaint that she sometimes had a problem with urination and bedwetting and opined that such a problem could interfere with her routine. (Tr. 326, 329) The ALJ afforded Dr. Toor's opinion great weight as it was consistent with the examination report and the lack of evidence of physical limitations. (Tr. 28)

While the ALJ implicitly rejected the portion of Dr. Toor's opinion regarding incontinence, the record shows that she repeatedly denied urinary symptoms during her medical visits between January 2014 and May 2016. (Tr. 335, 532, 683) Aside from her hearing testimony,[4] there is no evidence of record addressing plaintiff's incontinence, and Dr. Toor's opinion relied upon plaintiff's self-reports. It is well-settled that an ALJ is free to accept portions of an opinion that were supported by evidence and reject those that were not. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). The ALJ was not required to include a non-exertional limitation relating to incontinence in the formulated RFC because it is not supported by the medical record. See McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (although the ALJ's step four RFC finding did not explicitly include the plaintiff's non-exertional functional limitations, "Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be

---

[4] Though plaintiff does not challenge the ALJ's credibility finding, the Court notes that the ALJ found that "the medical record does not support [the] alleged symptoms. Further, there is evidence that the claimant is not always forthright with medical professionals, which may indicate an attempt to exaggerate her symptoms." (Tr. 27)

supported by substantial evidence such that additional analysis would be unnecessary or superfluous.") (citing *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (no function-by-function analysis for medical conditions or impairments the ALJ determines are not credible nor supported by the record is necessary)); *but see Heidrich v. Berryhill*, 312 F. Supp. 3d 371 (W.D.N.Y. 2018) (ALJ's failure to determine whether and to what extent claimant's incontinence affected her RFC warranted remand where plaintiff's urinary and fecal incontinence was "well established" by the medical evidence and acknowledged by the ALJ).

Plaintiff also challenges the mental RFC and the ALJ's reliance on the opinions of the consulting psychologist ("Dr. Brownfeld") and the state agency review physician ("Dr. Brooks-Warren"). (Pl. Mem. 17)

Dr. Brownfeld opined that plaintiff had no limitations in all areas of mental functioning, except for moderate limitations in appropriately dealing with stress. (Tr. 323) The ALJ afforded this opinion great weight. (Tr. 27-28) While the RFC did not contain an explicit limitation due to stress, the ALJ found that plaintiff was limited to "simple routine repetitive tasks" and that she was capable of performing unskilled work. (Tr. 22, 29-30) This is sufficient to account for plaintiff's moderate limitation in dealing with stress. *See Annarino v. Comm'r of Soc. Sec.*, No. 18-CV-130, 2019 WL 4643604, at *3 (W.D.N.Y. Sept. 24, 2019) ("limitations for simple work and interaction with co-workers adequately account for plaintiff's stress limitations, despite the fact that the RFC does not explicitly use the term 'stress.'") (collecting cases); *see also Rivas v. Berryhill*, No. 17-CV-05143, 2018 WL 4666076, at *15 (S.D.N.Y. Sept. 27, 2018) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude an individual's ability to perform unskilled

work."); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) (RFC determination limiting plaintiff to simple, routine, repetitive tasks was consistent with the ALJ's assessment that claimant had moderate difficulties with concentration, persistence and pace).

Dr. Brooks-Warren, the agency review physician, opined that plaintiff had the ability to understand and remember simple instructions; attend and concentrate for periods of two hours as is required in the workplace; interact appropriately with peers and supervisors, and adapt to routine workplace changes. She further opined that plaintiff "should not work with the public." (Tr. 333) The ALJ afforded the opinion "great weight" because it "agreed that the claimant does not meet a listing and is no more limited than found by the above [RFC]. However, I did include additional limitations in the [RFC] due to evidence submitted at the hearing level." (Tr. 29)

In her decision, the ALJ did not state that the limitation relating to plaintiff's ability to interact with the public was adopted, nor was it included in the RFC. (Tr. 22, 29) Although an ALJ is typically required to explain the reasons for rejecting parts of a medical opinion, "[a]n ALJ need not recite every piece of evidence that contributed to [the ALJ's] decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013). In finding that plaintiff had mild difficulties in social functioning, the ALJ wrote: "the claimant does not allege, either in her hearing testimony or in the medical records that she has difficulty interacting with people. [She] has a support network that includes her pastor, friends from church, and family. The claimant is able to interact with these social contacts and friends

in a normal manner without difficulty." (Tr. 21) The record supports this finding, see Tr. 40, 219, 323, 375, and the ALJ's rationale is clear from the face of her decision.

Despite Plaintiff's disagreements with the ALJ's decision, the Second Circuit has stated that the substantial evidence standard "is so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Social Security*, 692 F.3d 118, 127 (2d Cir. 2012) (citing *Console v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, "[u]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence . . . [she] must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Hanson v. Comm'r of Soc. Sec.*, No. 15 CV 0150, 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), *report and recommendation adopted sub nom. Hanson v. Colvin*, No. 15 CV 150, 2016 WL 3951150 (N.D.N.Y. July 20, 2016). The Court therefore finds that the ALJ's decision was free of legal error and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied, and defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: October 7, 2019
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge